**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Rendon, | No. CV-19-05875-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Circle K Stores Incorporated, | |
| Defendant. | |

Pending before the Court is Defendant Circle K Stores Inc.'s Partial Motion to Dismiss Plaintiff's First Amended Complaint.[1] (Doc. 25.) Plaintiff responded, (Doc. 36.), and Circle K replied. (Doc. 37.) Neither party requested oral argument and the Court finds a hearing unnecessary to resolve this motion. LRCiv. 7.2(f). After considering the First Amended Complaint, pleadings, and relevant law, Circle K's motion is denied.

## I. BACKGROUND

Ms. Rendon began working part-time at a convenience store in Arizona in 2018. (Doc. 25, "FAC" ¶ 9.) Shortly after beginning work there, Circle K bought the store and hired her on as a customer service representative. (*Id.* ¶¶ 8-9.) While working for Circle K, she was supervised by store manager and customer service representative Christopher Bradley Larson-Jarvis. (*Id.* ¶¶ 3, 8-9.) Ms. Rendon's complaint arises out of Mr. Larson-Jarvis' conduct at Circle K in his office on October 29, 2018.[2] (*Id.* ¶¶ 8-13.)

---

[1] The other defendant, Christopher Bradley Larson-Jarvis, is not a party to this motion.

[2] Ms. Rendon also alleges that before this date, "[Mr. Larson-Jarvis] had flirted with [her], asked her why she did not have a boyfriend, and had deliberately brushed up against her in

1    Ms. Rendon's First Amended Complaint alleges that on that day, she stopped at the

2    Circle K store where she worked to grab a coffee on the way to her other job. (*Id.* ¶¶ 8, 11.)

3    When she arrived, one of her co-workers working at that time told her to ask Mr. Larson-

4    Jarvis, who was in the back office of the store counting inventory and money, to cover for

5    him while he went to the bathroom. (*Id.* ¶¶ 8, 11.) Ms. Rendon went into the back office,

6    but Mr. Larson-Jarvis was not in his chair. (*Id.* ¶¶ 8, 11-12.) The First Amended Complaint

7    alleges that when she entered the office, Mr. Larson-Jarvis, who was "hiding where the

8    'soda bibs' are kept," "jumped out and closed and locked the office door behind [Ms.]

9    Rendon and proceeded to forcibly sexually assault her in  a portion of the office where

10   there was no surveillance coverage." (*Id.* ¶¶ 8, 12.) Ms. Rendon described being "shocked,

11   embarrassed, and humiliated" and immediately left the store, but did not report the incident

12   at that time. (*Id.* ¶¶ 8, 13.) After the sexual assault, Mr. Larson-Jarvis left Rendon alone for

13   a while, but Rendon alleges that he again made overtures to her again in December 2018,

14   telling her that she smelled good. (*Id.* ¶¶ 8, 14.) Rendon alleges that she wanted no

15   relationship with Mr. Larson-Jarvis, besides a working relationship, but that he would not

16   listen. (*Id.* ¶¶ 8, 14.) In the months following the assault, Mr. Larson-Jarvis reduced Ms.

17   Rendon's hours at Circle K. (*Id.* ¶ 15.)

18   In the First Amended Complaint, Ms. Rendon alleges that "Circle K had received

19   complaints in the past about [Mr. Larson-Jarvis] sexually harassing the women he worked

20   with before but Circle K took no meaningful action to stop [Mr. Larson-Jarvis]' outrageous

21   conduct." (*Id.* ¶ 20.) Further, the First Amended Complaint states that Mr. Larson Jarvis'

22   acts against Ms. Rendon "were committed within the scope of his employment during the

23   time when he routinely counted money and inventory at Ms. Rendon's store in early

24   morning in furtherance of Circle K's business. (*Id.* at 20.)

25   Five months after the incident, Mr. Larson-Jarvis transferred to work at another

26   Circle K and was replaced by a different store manager. (*Id.* ¶¶ 8, 16.) Ms. Rendon told her

27

28   an offensive matter." (*Id.* ¶ 10.) She also alleges that he had texted her saying "I wonder
     what sex would be like with you." (*Id.*)

- 2 -

1   new manager about the alleged assault, which eventually led to Circle K suspending Mr.

2   Larson-Jarvis for five days, but not firing him. (*Id.*) Because of the alleged incident, "[Ms.]

3   Rendon has suffered psychological trauma, physical harm, embarrassment, humiliation,

4   and continuing severe emotional distress, and anxiety." (*Id.* ¶ 21.) Her complaint alleges

5   claims of sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964,

6   42 U.S.C. § 2000e *et seq.*, common law battery, and intentional infliction of emotional

7   distress. (*Id.* at 7-9.[3]) The Title VII claims are brought solely against Circle K, while the

8   common law battery and IIED claims are brought against Circle K and Mr. Larson-Jarvis.

9   (*Id.*) Circle K now moves to dismiss the latter two claims against it under Federal Rule of

10  Civil Procedure 12(b)(6).

11  ## II.    LEGAL STANDARD

12          To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet

13  the requirements of Rule 8(a)(2). Fed. R. Civ. P. 12(b)(6). Rule 8(a)(2) requires a "short

14  and plain statement of the claim showing that the pleader is entitled to relief," so that the

15  defendant has "fair notice of what the . . . claim is and the grounds upon which it rests."

16  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S.

17  41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable

18  legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

19  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that

20  sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient

21  factual matter, which, if accepted as true, states a claim to relief that is "plausible on its

22  face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

23  Facial plausibility exists if the pleader sets forth "factual content that allows the court to

24  draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

25  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

26  statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more

27  than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint

28

---

[3] Ms. Rendon does not number the allegations concerning her four claims.

1    pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the

2    line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*,

3    550 U.S. at 557).

4    **III.    DISCUSSION**

5            After previously dismissing the common law battery claims and IIED claims against

6    Circle K due to Ms. Rendon's failure to adequately allege vicarious liability, the Court is

7    now tasked with determining whether the addition of allegations in Ms. Rendon's First

8    Amended Complaint are sufficient to allege vicarious liability for Mr. Larson-Jarvis'

9    tortious conduct. Circle K argues that the addition of three allegations: (1) that Mr. Larson-

10   Jarvis used his apparent authority to as store manager to accomplish his wrongful acts, (2)

11   that Circle K had received prior sexual harassment complaints against Mr. Larson-Jarvis

12   but took no action to stop his conduct, and (3) that the tortious conduct was committed

13   "during the time when he routinely counted money and inventory" fail to resolve the

14   deficiencies that warranted dismissal of the original complaint. (Mot. at 2-3; FAC ¶ 20.)

15   Ms. Rendon, in response, argues that Circle K asks the Court to ignore the newly pled facts

16   in the First Amended Complaint; facts which, if taken as true, show the sexual assault

17   plausibly occurred within the scope of Mr. Larson-Jarvis' employment. (Doc. 36 at 1-2.)

18           **A.  Vicarious Liability**

19           "An employer is vicariously liable for the negligent or tortious acts of its employee

20   acting within the scope and course of employment." *Higginbotham v. AN Motors of*

21   *Scottsdale*, 228 Ariz. 550, 552, ¶ 5, 269 P.3d 726, 728 (App. 2012) (quoting *Baker ex rel.*

22   *Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc.*, 197 Ariz. 535, 540, ¶ 17,

23   5 P.3d 249, 254 (App. 2000)). "[A]n employer is vicariously liable only for the behavior

24   of an employee who was acting within the course and scope of his employment." (citing

25   *Leigh v. Swartz*, 74 Ariz. 108, 245 P.2d 262 (1952); *Conchin v. El Paso & S.W.R. Co.*, 13

26   Ariz. 259, 108 P. 260 (1910)). Whether an employee's conduct falls within the course and

27   scope of his employment depends on several factors, including:

28           (1) whether the conduct is the kind the employee is employed to perform or

1
2
3

that the employer had the right to control at the time of the conduct; (2) whether the conduct occurs within the authorized time and space limits; and (3) whether the conduct furthers the employer's business, even if the employer has expressly forbidden it.

4   *Higginbotham*, 228 Ariz. at 552 ¶ 5, 269 P.3d at 728 (citations omitted); *see Guzman-*

5   *Martinez v. Corr. Corp. of Am.*, No. CV-11-02390-PHX-NVW, 2012 WL 2873835, at \*14

6   (D. Ariz. July 13, 2012) (noting additional factors under Arizona law to consider); *Ray*

7   *Korte Chevrolet v. Simmons*, 117 Ariz. 202, 207, 571 P.2d 699, 704 (App. 1977) ("Under

8   Arizona law, an employee is acting within the scope of his employment while he is doing

9   any reasonable thing which his employment expressly or impliedly authorizes him to do or

10  which may reasonably be said to have been contemplated by that employment as

11  necessarily or probably incidental to the employment." (citations omitted)).

12          Plaintiff argues that this case is analogous to *State v. Schallock*, 189 Ariz. 250, 941

13  P.2d 1275 (1997). In *Schallock*, the executive director of Arizona Prosecuting Attorneys

14  Advisory Council ("APAAC") had a decade-long history of sexually harassing women in

15  the APAAC office and at work-related events, including raping a law-student clerk at a

16  conference in Sedona. *Id.* at 252. The law student and another woman filed lawsuits against

17  Heinze and APAAC seeking damages for sexual harassment. *Id.* The Arizona Supreme

18  Court determined that whether the executive director's conduct of sexually assaulting and

19  harassing employees was within the scope of his employment presented a question for the

20  jury. *Id.* at 259. In reaching this conclusion, the court noted that almost all the executive

21  director's acts took place at APAAC's office or related locations and were within the

22  incidental business hours or sessions. *Id.* at 257. Further, the court noted that APAAC was

23  aware for close to a decade that the executive director "was engaged in egregious

24  improprieties and did little or nothing to call a halt." *Id.* In addition, the court noted that

25  APAAC should have expected such conduct given that the sexual harassment had occurred

26  for years before. *Id.* at 258. The court reasoned that "[a] jury might well choose not to

27  believe claims that these acts were unauthorized and outside the course of employment

28  when the employer permitted them to occur and recur over a long period at its place of

business and during business hours." 189 Ariz. at 257. The court also noted that to be within the course and scope of employment, "the act must be, at least in part, motivated by a purpose to serve the master rather than solely to serve personal motives unconnected to the master's business." *Id.* The court reasoned that the executive director simultaneously served the master by running the office and served his personal desires by fondling the file clerks and offering advancements for sex. *Id.* Thus, the court concluded that the record did not establish as a matter of law that the executive director's acts were not within the scope or authorization of his employment. *Id.* at 262, 941 P.2d at 1287.

Circle K, in response, attempts to liken this case to *Smith v. Am. Exp. Travel Related Servs. Co.*, 179 Ariz. 131, 876 P.2d 1166 (App. 1994). In *Smith*, a company manager sexually harassed a female employee who was not under his direct control, Smith, and forced her to have sex with him at work on at least four occasions. *Id.* at 134. However, the female employee never complained to management about the sexual harassment or sexual assault. *Id.* The inappropriate behavior was only made known to management after a different employee completed his exit interview and informed management of the misconduct. *Id.* Upon receiving information about the manager's inappropriate sexual behavior, the company took immediate action, and the manager resigned. *Id.* at 134-35, 1169-70. Smith sued the company asserting claims for assault, battery, and IIED among other claims. *Id.* at 135. The Arizona Court of Appeals upheld the decision of the trial court to grant summary judgment in favor of the company, finding that the manager did not act within the scope of his employment when he sexually assaulted and harassed Smith. *Id.* The court found that the manager's conduct "was neither the kind of activity for which he was hired nor was it actuated, even in part, by a desire to serve [the employer]." *Id.* Instead, the court found that the manager's acts were committed solely to further his personal interests. *Id.* at 136, 876P.2d at 1171. Further, the court justified its decision by concluded that "no evidence exists from which a reasonable juror could conclude that [the employer] knew about [the manager]'s misconduct and ratified it because Smith never told other managers of the company about the incident. *Id.* at 137.

- 6 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

The Court finds that the facts alleged in the First Amended Complaint are analogous to those in *Schallock*. Here, although it is a close call, the Court finds that the First Amended Complaint sufficiently pleads vicarious liability to hold Circle K liable for Mr. Larson-Jarvis' alleged conduct. The First Amended Complaint contains the new allegation, which the Court must accept as true, that "Circle K had received complaints in the past about [Mr. Larson-Jarvis] sexually harassing the women in he worked with before but Circle K took no meaningful action to stop [Mr. Larson-Jarvis]'s outrageous conduct." (Doc. 25 ¶ 20.) Taken as true, the allegation creates the inference that Circle K knew of past sexual harassment from Mr. Jarvis-Larson, and continued to allow him to work at the business unchecked. Additionally, the acts allegedly took place at the Circle K store where Mr. Larson-Jarvis worked, and occurred during his working hours. Although Ms. Rendon was not on duty, Mr. Larson-Jarvis was allegedly working on counting money and inventory just before the alleged sexual misconduct occurred. Thus, pursuant to the *Higginbotham* factors and the ratification analysis in *Schallock*, the Court finds that the facts alleged in the First Amended Complaint plausibly allege vicarious liability.

16
17
18
19
20
21
22

The Court disagrees with Circle K's contention that this case is like *Smith*. Unlike in *Smith* where the employer knew nothing about the manager's sexual harassment and sexual assaults, here, Ms. Rendon has alleged that Circle K has received complaints of sexual harassment against Mr. Larson-Jarvis in the past and has done nothing to curb his behavior. Taking those allegations as true, which the Court must, the Court finds that Ms. Rendon has sufficiently alleged a plausible legal theory that Mr. Larson-Jarvis was acting within the scope of his employment when the alleged sexual assault occurred.[4]

23
///

24
///

25
///

26

27
28

[4] Additionally, the Court notes that *Smith* and *Schallock* were decided at the summary judgment stage. *Smith*, 179 Ariz. at 133; *Schallock*, 189 Ariz. at 251. Unlike at the summary judgment stage, here the alleged facts must merely show that vicarious liability against Circle K is plausible.

1

**IV.   CONCLUSION**

2          For the foregoing reasons,

3          **IT IS ORDERED** denying Defendant Circle K's Partial Motion to Dismiss

4    Plaintiff's First Amended Complaint. (Doc. 31.)

5          Dated this 9th day of November, 2020.

6

7

8

9                                   Honorable Susan M. Brnovich
                                    United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28